## J. A. HONEYCUTT v. THE STATE.

No. 1921. Decided June 13, 1900.

**1. Murder—Evidence—Declarations of Defendant—Res Gestae.**

On a trial for murder, declarations by defendant as to the difficulty made some five or ten minutes thereafter and within about 100 yards of the scene of the homicide, were admissible as res gestae, and it was error to reject the testimony.

**2. Same—Express Malice—Charge.**

On a trial for the murder of his daughter, where it appeared defendant in attempting to assault his wife with a knife fell over a chair, whereupon his children

laid hold of and held him upon the floor, and deceased, his eldest daughter, seized an ax and used it upon defendant, inflicting upon him several severe wounds, and he stabbed her with the knife, Held, a charge that if he assaulted his daughter with intent to kill her he would be guilty of murder in the first degree was not authorized by the evidence. In order to constitute murder in the first degree express malice must have been shown against the daughter.

**3. Same—Murder in Second Degree.**

If a party assaults one person under circumstances such as would make a killing murder, and another party not intended to be killed is killed either by accident or design, this would be murder in the second degree upon implied malice.

**4. Same—Manslaughter.**

If defendant assaulted his wife with no intention of killing her but only to inflict violence upon her, and subsequently killed his daughter in resisting her attack upon him with an ax, his offense would be of no higher grade than manslaughter.

APPEAL from the District Court of Shelby. Tried below before Hon. TOM C. DAVIS.

Appeal from a conviction of murder in the first degree; penalty, death. The indictment charged appellant with the murder of Rosa Honeycutt on the 21st day of January, 1900, but cutting and stabbing her with a knife. All the important facts are briefly but very lucidly summarized in the opinion.

No additional statement is required.

*I. O. B. Richardson* and *E. B. Wheeler,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death.

Cooper, a witness for the State, testified: That he was at home, about 100 yards from the scene of the homicide, about 8 o'clock at night, when he heard the cries of women at appellant's residence. That he started in that direction, and met some of the children about halfway, and returned with them to his house. While returning he saw defendant, alone, entering his yard. That, at the muzzle of his Winchester rifle, he forced appellant to retire outside the yard, and said to him, "Now, if you have anything to say to me, say it there." Up to this time nothing had been said by either of them. This occurred about five or ten minutes after he had first heard the outcry. Josephine Honeycutt had testified in behalf of the State that she and her brothers and sisters had defendant down on the floor at the time of the outcry, and during the difficulty, before letting him up; that, as soon as they let him up, he at once went in the direction of Cooper's residence. Appellant then proposed to prove his statement to Cooper "that his (defendant's) family had tried to kill him that night, and that he had done what he did in self-defense, and to keep his family from killing him, and that he feared he had killed his daughter Rosa, and requested witness to go back to his house with him, and that he then and there

went back with him." Exceptions were reserved to the rejection of this testimony. This was admissible as res gestae.

We do not purpose reviewing the various criticisms of the charge. Two theories were sharply presented under the evidence. For the State it is contended: That defendant armed himself with an ax and a knife of a deadly character, and entered the room where his family were congregated after supper. That as he entered he shut and "thumb-latched" the door. On entering he placed the ax by the side of the door, and took his seat on the opposite side of the room, near his wife, in front of the fireplace, and immediately by the side of his little daughter, and began a conversation, which finally became unpleasant and caustic, in regard to an absent son, whose picture was hanging on the wall, over the fireplace. His wife stated that, if the picture annoyed him, she would remove it, whereupon he arose and advanced upon her with the drawn knife, evidently for the purpose of assaulting her. While advancing he fell over a rocking-chair, and his children at once laid hold of him, and held him on the floor. Just how the ax got into the difficulty is not explained by the evidence. Still, it was there, and was used by deceased,—his oldest daughter. During the altercation appellant was struck two or three times with the ax, evidently by deceased. He finally stabbed her, causing her death. During the trouble the wife left the room, and when deceased was stabbed all of the children fled to Cooper's residence; defendant also going in that direction. His theory was that when he entered the room he thumb-latched the door because it would not otherwise remain closed; that he had no recollection of carrying the ax into the room, and knows positively that he did not remove it from beside the door; that while sitting in the chair, and during the conversation, he was struck a very severe blow upon the head, followed immediately by a second lick, which felled him to the floor, that the children immediately seized him, his deceased daughter using the ax; and that in defense of himself against this attack he stabbed the deceased. It is an undisputed fact that there were two wounds on the head, and a very severe incisive cut between the collar bone and neck, some two or three inches in depth. One of the licks chipped off a portion of the skull bone. As we understand this evidence, there was no assault upon deceased until after the blows had been inflicted upon appellant by the ax, and after the children had seized him. His evident intention was to assault his wife, and not the daughter, and the assault upon her was made for the purpose of freeing himself from their attack. In this state of case, if he had intended to kill his wife, with either express or implied malice, but during the difficulty was forced to kill his daughter in defense of his life, the killing would have been of no higher grade than murder in the second degree. In other words, in order to constitute murder in the first degree, express malice must be shown as against the girl. Express malice is an affirmative fact, and must be proved. Many illustrations are given in the books of this character of case; and the rule seems to be, without excep-

tion, in this State, that where an accused assaults one person under circumstances which would make a killing murder, and another party, not intended to be killed, is killed, either by accident or design, this would be murder in the second degree,—that is, upon implied, and not express malice. McCoy v. State, 25 Texas, 333; Reed v. State, 11 Texas Crim. App., 509; Halbert v. State, 3 Texas Crim. App., 656; Taylor v. State, Id., 387; McConnel v. State, 13 Texas Crim. App., 390; Clark v. State, 19 Texas Crim. App., 498; Musick v. State, 21 Texas Crim. App., 69; Leggett v. State, 21 Texas Crim. App., 382; McConnell v. State, 22 Texas Crim. App., 354; Breedlove v. State, 26 Texas Crim. App., 445; Richards v. State, 35 Texas Crim. Rep., 38. These cases are decided upon the theory that express malice is an affirmative fact, and must be affirmatively shown, and unless this has been done the killing could not be murder in the first degree, but would be upon implied malice, and therefore murder in the second degree. In other words, under such state of case the malice would be but an inference. This idea also underlies the theory of imperfect self-defense. Reed v. State, 11 Texas Crim. App., 509; McCoy v. State, 25 Texas, 333.

Applying these rules to this case: If appellant made a malicious assault upon his wife with intent to take her life, it would be an assault with intent to murder, and if a killing had occurred, it would have been either in the first or second degree; and being foiled in this by the attack of his children, and he killed deceased in resistance of such attack, he would be guilty of no higher offense than murder in the second degree. In this connection the court charged the jury in substance: If the assault was made upon the wife with intent to murder her, and with intent to murder his daughter, he would be guilty of murder in the first degree. Of course, if he assaulted his daughter with intent to kill her upon his express malice, he would be guilty of murder in the first degree whether he made an assault upon his wife or not. But we do not believe this portion of the charge was authorized by the evidence, and that it was injurious is rendered certain by the fact that a verdict of murder in the first degree was obtained inflicting the death penalty. Of course, if he assaulted his wife with no intention of killing her, but only to inflict upon her violence and subsequently killed his daughter in resisting her attack with the ax, his offense would be of no higher grade than manslaughter. For the errors indicated the judgment is reversed and cause remanded.

*Reversed and remanded.*