### JEFF CRAVENS V. THE STATE.

#### No. 4139.   Decided December 9, 1908.

#### Rehearing Denied March 17, 1909.

**1.—Murder—Absence of the Judge.**

Where upon trial for murder the record on appeal showed that the trial judge, during the progress of the trial, remained in touch with what was going on in the courtroom (while he was called to the telephone) to the extent that he could hear the voice of counsel, and would have noted any interruption of the speech of defendant's counsel who was addressing the jury at the time, or any unusual occurrence in the course of it; and that he was listening and looking through the window and noted what was going on in the courtroom, etc., there was no error.

**2.—Same—Trial Judge—Practice on Appeal—Affidavits.**

Affidavits attached to a motion for rehearing in the Court of Criminal Appeals impeaching the correctness of the judge's statement attached to appellant's bill of exceptions, will not be considered.

**3.—Same—Misconduct of Jury—Verdict by Lot.**

In order to vitiate a verdict that has been determined by lot, the proof must show that the jury made an agreement beforehand to find a verdict by lot, and that they should be bound by that agreement whatever results might be ascertained therefrom, which should be the penalty fixed; and where upon trial for murder the verdict was not the result of any such agreement beforehand to determine the penalty by lot, there was no error. Following Pruitt v. State, 30 Texas Crim. Rep., 156.

Appeal from the District Court of Shelby. Tried below before the Hon. Jas. I. Perkins.

. Appeal from a conviction of murder in the second degree; penalty, nine years confinement in the penitentiary.

The opinion states the case.

*H. E. Stephenson* and *S. H. Sanders,* for appellant.—Cited cases in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This is an appeal from a conviction for murder in the second degree with a penalty of nine years.

No statement of facts accompany the record in this case. In the

record we find two bills of exceptions—one is that the judge absented himself from the courtroom while the case was being tried, and, second, the jury reached their verdict by lot.  1.  In regard to the first question the facts show that while one of counsel for appellant was addressing the jury someone called the judge to the telephone.  This telephone was located in an anteroom, which opened into the courtroom and was situated some sixteen feet from where the jury sat and the courtroom was in view of the judge all the time.  The judge was absent some fifteen minutes, and in his qualification to the bill states that while in said room he had the case under control and had the jury and counsel in view while he was talking over the telephone.  In the well considered case of Bateson v. State, 46 Texas Crim. Rep., 34, 80 S. W. Rep., 88, this court, speaking through Judge Henderson, says: "This question has been before a number of tribunals in the various States of the Union and the current of authority in criminal cases is one way with a very few exceptions.  That is, in the trial of felony cases, especially in capital cases, the absence of the judge from the courtroom during the trial will constitute cause for reversal in case of conviction.  This presence of the judge, who is the presiding genius of the court, is construed not to mean absolutely within the courtroom, but so near as to be within sight and hearing of the proceedings, that is, in such a situation as to retain control of all that transpires during the trial.  Otherwise, there is no way by which the court can be informed as to the errors that may occur.  For as to those he does not get his information by proxy, but he must judge of the matter by his own ear and his own eye.  If by his absence, though temporary, the reins escape him and he loses that control and supervision of the court, which is so necessary to safeguard every right of the defendant in the particular case and a conviction follow, it will be set aside, notwithstanding no injury can be pointed out."  The facts of this case are dissimilar to the Bateson case.  In the Bateson case the judge absented himself from the courtroom, went into an anteroom, closed the door and remained in there some three hours.  While in this case the door was not closed and the judge had in view and control the proceedings of the case and was so near as to be within sight and hearing of the proceedings and was in such situation as to retain control of all that transpired during the trial.  We therefore hold that this exception is without merit, and to authorize a reversal because of the absence of the judge, the record must disclose that said absence was of such a character as to show affirmatively that the proceedings were out of view and hearing of the court and that the judge was in such position during his absence as to lose control of the proceedings of the trial.  See Lewis v. State, 15 Texas Crim. App., 647.

The next question presented by appellant is the misconduct of the jury in that the jury decided on the penalty that should be given

the defendant by lot, that is, each man put down the number of years, and they added this up and divided by twelve and the result was the verdict agreed upon. The court below heard testimony upon this issue, and on the trial of the issue two of the jurors, to wit, Will Rogers and J. P. Wood, testified. The substance of their testimony is as follows: Someone of the jurors suggested that each man put down the number of years that he thought the appellant should have and add their sum total up and run twelve through it and see how many that would give. Rogers further testified: "Before we did this we did not agree. There was some of them that would not agree that that should be the verdict. We just wanted to see how it would run through and we tried it three times, and the last time, after some discussion, we decided on nine years. We did not get the same result each time because some of the jurors changed their numbers. They made them lower and finally it came out nine years and a fraction, and then after something like thirty-five or forty minutes' discussion, we agreed on nine years, but before we run twelve through the number it was not understood that that should be the verdict. We were simply experimenting with it. My impression is that I was the one who suggested this experiment, but four or five of the jurors spoke up and said they would not be bound or agree to any result that might be reached in that way." The juror Wood testified as follows: "Q. If in determining the term you would give defendant, if each member put down the term he wanted him to have and you divided by twelve, just tell me fully how you did that and what the agreement was and what should be the effect of your proceeding that way? A. Well, the way we did in reaching at an average of what the verdict should be, we would take what each man would say and add them together and divide it by twelve, and would get at about what the average would be and then whenever we would do that we would take a vote on all that was in favor of about what that average would be. We did this two or three times, but I will state that it was understood by me, and I think thoroughly with everybody, that there was nothing to that more than just to try to get together. There was no agreement between us that we should be bound by the result, and after this result was reached we voted two or three times and never did agree upon the result reached by this adding and division. There was no agreement that we should be bound by this result, but this was simply done as an experiment." We think this case is unlike the case of Driver v. State, 38 S. W. Rep., 1020. In the Driver case the jury agreed that they should add the number of years that each juror wanted to give the defendant and divide by twelve and the result should be the verdict. This court held that that was reversible error. But the facts of this case are similar to the case of Pruitt v. State, 30 Texas Crim. App., 156, in which this court held that the verdict was not vitiated on proof of the following facts: To ascertain the punishment to be

assessed the jury agreed that each juror should state the number of years he was in favor of assessing and that the several numbers thus stated should be added together and the aggregate ·sum should be divided by twelve and the quotient should be the term assessed by the verdict.    This was done and the quotient was five years and seven months.    This result was not agreed to by the jury, and after some discussion the jury fixed the punishment at five years.    This court held that the verdict was not the result of ·any agreement entered into by the jury beforehand to determine the penalty by lot. We therefore hold that in order to vitiate a verdict that has been determined by lot the proof must show that the jury made an agreement beforehand and that they should be bound by that agreement, and that whatever results might be ascertained from the agreement should be the penalty affixed.    This, as we understand it, would be a verdict that would be improper and such a verdict as the court could not uphold.    In this case we do not think the facts show a verdict reached by lot and following the rule laid down in the Pruitt case, supra, we think the point is without merit.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

ON REHEARING.

March 17, 1909.

RAMSEY, JUDGE.—The motion for rehearing in this case is but an amplification of the matters urged on the original submission and somewhat fully treated in the original opinion.    In view of the earnestness with which the matter is presented, however, and the insistence that the opinion does not fully or accurately state the facts in respect to the matter of the absence of the judge, we make the following additional statement:    The bill of exceptions, as tendered, recites that while the trial was in progress the judge left the courtroom and was absent about twenty minutes, and that when such alleged absence was questioned, appellant tendered proof of this fact that the said presiding judge went into an anteroom where he remained for a period of not less than fifteen minutes, and where he carried on a conversation over the telephone; and that the door to this room was closed, as were also the windows, and that in view of the surroundings and location of the rooms it would be an absolute physical impossibility for any person carrying on a conversation over the telephone to have heard or seen anything that was being said and done in the courtroom where appellant was being tried; that when this proffer was made, the bill recites, the court agreed and stated that no proof need be introduced, and that he would agree that what was set forth was true and correct; that later the court said he would agree to all, but that he could see all that was going on, to which appellant excepted, and to substantiate the matters contained in the bill, appellant attaches the affidavit of certain witnesses

named by him, and asks that same be made a part thereof, together with a plat attached to his motion, showing the location of the anteroom with reference to the main courtroom, as well as the location of the telephone in said anteroom. On this bill of exceptions the court makes the following indorsement: "This bill is allowed with the qualification that the map while perhaps in most respects correct appears incomplete and misleading from its being on so large a scale and yet failing to bring out the entire courtroom, and particularly the brick wall between the window at the right of the telephone and the window between it and jury box appear proportionately too thick, because they appear to cut off the view between window at telephone and the front of jury box, while my recollection is that this view is unobstructed. Further, the incident occurred this way: While one of the counsel for defendant was addressing the jury I was notified there was a long distance call for me and I went to telephone without interrupting counsel and closed the door behind me, but took care to keep in touch with what was going on in the courtroom to the extent that I could hear the voice (while, perhaps, I did not distinguish the words) of the counsel speaking and would have noted any interruption of his speech or any unusual occurrence in the course of it. I had my face at the telephone but a moment while speaking through it, and the balance of the time was standing some feet in front of it and waiting for the party to call me, and meanwhile I was listening and looking through the window to note what was going on in the courtroom. While at the telephone I was the same distance from the jury as when in my seat on the bench, and while on the bench during arguments to the jury I am usually engaged in reading or writing and ordinarily am less conscious of what is going on than on this occasion when I had the matter somewhat in mind and was endeavoring to keep in touch with same and think I was so in touch for all substantial purposes." The statement in the opinion that the door was not closed was inaccurate. The substantial statement, however, is true, if we may accept the statement of the presiding judge, that he was in touch with what was going on in the courtroom to the extent that he could hear the voice of counsel, and would have noted any interruption of the speech of counsel or any unusual occurrence in the course of it, and that he was listening, and looking through the window and noted what was going on in the courtroom, and was, as he states, rather more conscious of what was going on on this occasion when he had the matter somewhat in his mind and was endeavoring to keep in touch with same, than he usually was when on the bench engaged in the preparation of his charge. In this connection it may be stated that attached to the motion for rehearing are certain affidavits impeaching the correctness of the judge's statements. These, for obvious reasons, can not be considered. This was a matter happening in the presence of and subject to the control and regulation of the court, and in

respect to which, in the shape that the bill was filed, we must give credence to the statement of the presiding judge. It is unfortunate that such a controversy should arise, and, as explained in the affidavits touching the motion, it is possible that they might have strengthened their case materially but for the fact that the bill was prepared and filed at so late a date in the term as to render this course impossible. It is not, however, lightly to be assumed that a presiding judge in this State would either inaccurately or untruly state the facts in respect to so important a matter. We must, in the nature of things, have some criterion and some ultimate arbiter in respect to matters of this sort, and if we may not and can not accept the authentication deliberately made of a sworn officer of this State charged with the responsibility of the proceedings in the trial of cases, there would be endless confusion. Nor do we believe that it should be required that, in respect to a matter of this sort, the judge should become as any other person, a simple witness and to be sworn as such. In respect to this matter he is acting in an official capacity and under all the solemnities and with reference to all the obligations of an oath of office. We beg to urge trial courts to use the utmost care to always keep in personal touch with trials and to be personally present in the courtroom during the progress thereof.

There is no other matter discussed in the motion that seems to require attention. Believing that as presented, there is no error for which the case could, or should, be reversed, it is ordered that the motion for rehearing be and the same is hereby overruled.

*Overruled.*