### F. M. JOHNSON v. THE STATE.

#### No. 2780.  Decided June 22, 1904.

**1.—Confession—Murder—Res Gestae.**

Where the defendant made a statement without warning to the officer who had arrested him, a few minutes after the homicide, while he was still excited from the occurrence, and such statement was freely and voluntarily made to the effect that he was not sorry he shot the deceased, it was admissible not as a confession but as res gestae.

**2.—Charge of the Court—Adequate Cause—Manslaughter.**

Where the court's charge on manslaughter confined adequate cause to provocation which arose at the time of the commission of the homicide and guarded the jury against former provocations, and the evidence showed previous threats by deceased against defendant, and that not a great while before the tragedy the defendant and deceased had a previous unpleasant wordy altercation, and later as defendant was returning home deceased met him and struck him a lick which caused pain and bloodshed, and that thereupon they got into a wrangle which ended in the death of deceased, it is held that said charge was too restrictive.

**3.—Argument of Counsel.**

See opinion for criticism of unwarranted statements by counsel which tend to influence the minds of the jury.

Appeal from the District Court of Tarrant.  Tried below before Hon. Irby Dunklin.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The following statement is taken from appellant's brief and is substantially correct:

.The killing occurred under a large shed situated on what is known as Market Square, about dark at night.  This Market Square consists of a block of ground about 200 feet square, bounded on the north by

Bluff Street, on the south by Belknap Street and on the west by property inclosed and improved and situated where Throckmorton would be if it extended through the block to Bluff Street; said square and shed being just across Bluff Street south and immediately in front of the Summit House, where appellant lived, the courthouse and the business part of the city being south and southeast from said Market Square, so that a person going from said Summit House to the courthouse or any part of the city would pass immediately by said shed and square on the sidewalk on the west side of Houston Street, there being no sidewalk on the east side of Houston Street.

The said shed in question covered the entire east side of said square and extended south from the intersection of Belknap and Houston streets about eighty feet, the roof being supported by long posts about twenty-four feet apart. This shed and Market Square were intended for the use of the public, and especially the farmers who brought their produce and other marketable stuff to the city to sell. The deceased was an auctioneer and occupied a stall or apartment about twenty-four feet square under the shed, same fronting on the north side of Belknap Street, and being the space between the second and third posts west from the corner of Belknap and Houston streets; deceased sold various articles of household furniture, etc., at auction, and kept them in the stall occupied by him and slept there at night on a cot.

Some time prior to the killing deceased had boarded with appellant and they had a falling out over the board bill and had wordy altercations over it on several occasions, in which deceased cursed and abused appellant and on one occasion came to blows, the deceased making violent threats against appellant. This state of facts continued up to the day of the killing, and on that day they had several quarrels in which deceased threatened appellant, and on one occasion late in the afternoon deceased told appellant that he was ready for him; to come on. As he said this he was standing behind a table in his stall and had his hand under something that was on the table. Appellant, who was on the sidewalk, turned and went back toward town, as he testified, thinking he would arm himself, and went to Alex Hunter's and tried to get a gun. Failing in this he says he went to Arnold's grocery store to pay his bill, but was told the bill was not made out. It was then about dark and he left there for his home, going north on Throckmorton Street to Belknap; then east on Belknap till he got about the shed, when he saw deceased come out from under the shed as if to cross the street. Appellant then turned north and got on the sidewalk and was going east on the sidewalk, when deceased, who was then some ten or twelve feet from the sidewalk out in the street, turned and came back, meeting the appellant on the sidewalk in front of the entrance to deceased's stall. Here the difficulty begun. The State's theory was that appellant began it, while appellant testified that deceased began it by striking him over the head with something that afterwards turned out to be a pistol. All the evidence showed that they continued fighting and struggling back into

the deceased's place of business about twenty feet, and then back near the entrance at the sidewalk, where the pistol was discharged, inflicting a mortal wound upon deceased, from which he died on the evening of the next day. Appellant testified that he had no gun, but that the gun which was discharged during the fight was the one deceased assaulted him with at the beginning of the difficulty and was discharged while they were scuffling over it. Appellant proved by witness Matt March that the pistol was the one that he (March) sold deceased on the forenoon of the day of the killing, and it was his theory that deceased intended to kill him and bought the pistol for that purpose, while the State contended that deceased had no pistol and that appellant procured the pistol just before the killing for that express purpose. The proof showed that appellant had not owned a pistol for several years. So the issue was drawn as to which of the two began the difficulty.

*Parker & Parker,* for appellant.—In that part of its charge which instructed the jury as to the law of manslaughter and as to the adequate cause and what is meant by "under the influence of sudden passion," the court limited the jury in determining said matters to what transpired at the very time of the killing and did not permit them to take into consideration the threats, insults and altercations, which occurred prior to that time. This part of the court's charge is erroneous. Bracken v. State, 29 Texas Crim. App., 362; Spangler v. State, 55 S. W. Rep., 326; Orman v. State, 24 Texas Crim. App., 495.

*Howard Martin,* Assistant Attorney-General, for the State.—Appellant insists that the court's charge on manslaughter is defective, because the court did not instruct the jury that they could consider the antecedent facts and circumstances in evidence in determining adequate cause or provocation. The State submits that appellant is in error in this contention. The court instructed the jury, "If from all the facts and circumstances in evidence you believe beyond a reasonable doubt that defendant," etc. This was equivalent to telling the jury that they might look to all the facts and circumstances in evidence to determine the provocation and adequate cause. It may be that the court's charge is not as definite and full as it should have been, but the charge given was not calculated to mislead the jury to appellant's prejudice. Code Crim. Proc., art. 723.

The serious question in the case is presented by bill of exceptions number 37. This bill relates to the action of the court permitting the State to prove by L. H. Dillard, deputy sheriff, appellant's confessions. Appellant objected to this testimony on the ground that he was under arrest and was not warned. The bill shows that he was under arrest, and it is very doubtful whether the warning was sufficient. In fact, I do not believe it was. However, the court in approving this bill says, "It appeared to the court that the statements made by defendant were within a few minutes after the homicide while defendant was still ex-

cited from the occurrence, were freely and voluntarily made by him, and were clearly res gestae and clearly admissible." If this statement of the court is borne out by the facts there was no error in admitting this testimony. Vann v. State, 8 Texas Ct. Rep., 949; Powers v. State, 23 Texas Crim. App., 42.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the second degree, the penalty assessed being five years in the penitentiary.

Appellant reserved a bill of exceptions to the testimony of the witness Dillard, a deputy sheriff. At the time of the killing, this witness states, he was at the sheriff's office, about 100 yards from the scene of the killing; that upon hearing the shot he started towards the square, and en route met a man by the name of Fox and defendant. He asked them what was the trouble, and they told witness about it; that he then told defendant to step inside the sheriff's office, and he did so. He and defendant had a few words behind the door, and he told defendant he would have to take him to jail. Defendant said all right. Witness turned and went to jail with defendant. That Fox and defendant began talking, and witness told defendant not to talk, that he did not want to take the stand against them; that witness just remarked to defendant they wanted to tell him something about. Witness told Fox not to say anything to him, that he did not care to hear anything about it; that defendant said a few words to him, and witness told him not to say anything about it; that he did not want to know anything about.it at that time; that witness was boarding with defendant; that when defendant said something about the blood on his hands, defendant was under arrest; that witness asked defendant how the blood came on his hands, and defendant replied he did not know. Witness then said, "Uncle Frank, come on to jail." They then started to go to jail, and as we were passing down the steps of the courthouse defendant remarked he was not sorry he shot deceased, saying he "was not sorry he shot the damn son of a bitch." Objection was interposed to this testimony because there was no warning given; defendant being under arrest; no sufficient predicate being laid for this statement. It appeared to the court that the statements made by defendant were within a few minutes after the homicide, while defendant was still excited from the occurrence; were freely and voluntarily made by him, and were clearly res gestae and admissible. This bill was prepared by the court. Of course this evidence was not admissible as a confession, because defendant was under arrest and had not been warned. This is recognized by the court, and therefore he certifies it was res gestae. It is not clear from the statements of the bill how long this occurred after the transaction, but it could not have been a very great while, for the court says a very few minutes. We are of opinion the admission of this testimony was correct. Bateson v. State, 10 Texas Ct. Rep., 208.

Exception was reserved to the court's charge on manslaughter. The

court gave the usual stereotyped definition of manslaughter under the immediate influence of sudden passion and adequate cause. Among these charges. was, that the provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation. As an adequate cause, the court instructed the jury that an assault and battery by deceased causing pain or bloodshed is one of the adequate causes under the law. There was testimony to the effect that appellant was struck by deceased in such manner that it caused pain and bloodshed. There was quite a lot of testimony introduced showing previous altercations between the parties; that deceased had made threats and had otherwise insulted appellant, and used language that was calculated and did tend to inflame his mind; that these troubles mainly grew out of the fact that deceased owed defendant a board bill, which he had disputed and refused to pay, but did subsequently agree to pay a portion of it, and this seems to have been the inception of serious troubles, wordy altercations between them, and threats on the part of deceased towards appellant. It) is not necessary to detail these. As before stated, the court charged the provocation must arise at the time, and that the passion must not be the result of some former provocation; and further that an assault and battery by deceased causing pain or bloodshed would be adequate cause. Now, the court, applying the law, thus charged the jury: "If from all the facts and circumstances in evidence you believe beyond a reasonable doubt that defendant, F. M. Johnson, did, in Tarrant County, Texas, on or about the 13th day of September, 1902, and before the filing of this indictment, unlawfully kill J. P. Robinson, by shooting him with a pistol, and that such killing was committed under the immediate influence of sudden passion on the part of defendant, as the expression 'under the immediate influence of sudden passion' is above defined, and that the same arose from an adequate cause, as the expression 'adequate cause' is above defined, then it will be your duty to find defendant guilty of manslaughter," etc. The objection urged is that this is too restrictive, and confines the jury in their examination of adequate cause to the provocation occurring at the time of the difficulty, and eliminates all the prior acts, words and conduct of the deceased toward appellant from the consideration of the jury in determining the adequacy of the cause or the sufficiency of the provocation to reduce to manslaughter. The immediate facts from the defendant's standpoint were, that they had had a previous unpleasant wordy altercation, and on the same evening, and not a great while before the tragedy, later, as he was returning home he was met by deceased, who struck him a lick that caused pain; and it is shown that subsequent to this transaction he had blood on his person and hands, and perhaps on his head; that they got into a wrangle over the pistol deceased had, and during that trouble or scuffle the pistol was discharged and deceased killed. Under all these facts and circumstances we believe this charge was too restrictive. While it is true, if deceased struck him with a pistol and produced pain or blood-

shed, either or both, and that enraged him beyond cool reflection, and he shot and killed deceased under those circumstances, the offense would be manslaughter, appellant had the right, under our decisions and law, to have the jury view not only the facts and circumstances immediately attending the killing, but also those which preceded the difficulty, showing adequate cause, or tending to render his mind incapable of cool reflection. The decisions on this question are unbroken. We refer to Bracken v. State, 29 Texas Crim. App., 362; Orman v. State, 24 Texas Crim App., 495; Spangler v. State, 55 S. W. Rep., 326.

Several bills of exception were reserved to the argument or statements of the prosecuting attorney in his closing address. These were entirely outside the record, and had no connection with the case, and referred to the hanging of Morrison for the murder of his wife, and the conduct of the former mayor of the city of Fort Worth eloping with a telephone girl, and matters of this character. Unwarranted speeches and statements that may tend to inflame the minds of the jury outside and beyond the facts of the case should not be indulged; and the trial courts should promptly suppress such statements, as was done by the trial judge in this instance, for which we commend the court. These matters are getting to be too frequent in occurrence.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*