Earl Hobbs v. The State.

No. 4427.   Decided February 17, 1909.

**1.—Manslaughter—Evidence—Charge of Court—Husband and Wife.**

Where in a prosecution for murder the defendant had been acquitted of both grades of murder at a previous trial, and could not have been convicted of homicide above the grade of manslaughter, upon which latter offense the court alone submitted his charge to the jury as a matter of law, and he was given the lowest term for this offense, the question of a cross-examination of defendant's wife as to the details of an insult by deceased, about which she had not been interrogated on her examination in chief, became immaterial.

**2.—Same—Evidence—Res Gestae—Voluntary Statement.**

The fact that declarations are made in response to questions does not of itself invalidate them as part of the res gestae; and a declaration by the deceased in response to a question that he did not know of any reason why the defendant shot him, as he had not given him any cause to shoot him, was admissible, and should not have been rejected on the ground that it was not voluntary; the same having been made a very short time after he had been shot, and not objectionable as having been made too long after the shooting; there being nothing to show that the declarations were not spontaneous. Following Johnson v. State, 46 Texas Crim. Rep., 291.

**3.—Same—Evidence—Testimony on Former Trial.**

Upon trial for murder there was no error in admitting in evidence the written testimony of a State's witness which had been taken before a magistrate and had been used on a former trial, because the witness had moved beyond the limits of the State; it not being shown in the bill of exceptions that the State's counsel knew that said State's witness had returned at any time within the jurisdiction of the court, or that anything had occurred which would place State's counsel upon inquiry or put them on notice of such witness' return: and it further appearing that at the trial said witness had permanently moved from the State.

**4.—Same—Charge of Court—Insult of Female Relative—Manslaughter—Self-Defense.**

Where upon trial for manslaughter the court instructed the jury that insulting conduct by the deceased towards defendant's wife would not justify the killing of the deceased by the defendant: and also properly submitted the law of manslaughter, and defendant's right to arm himself and seek an explanation from the deceased, in connection with his right of self-defense, there was no error.

Appeal from the District Court of Hill.   Tried below before the Hon. W. C. Wear.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Collins & Cummings,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of cross-examination of wife:   Hoover v. State, 35 Texas Crim. Rep., 342.

RAMSEY, Judge.—Appellant was convicted in the District Court

of Hill County, of the crime of manslaughter and his punishment assessed at confinement in the penitentiary for a term of two years.

This is the second appeal of this case. The first appeal will be found reported in the 53 Texas Crim. Rep., 71, where a fairly complete statement of the facts will be found. On the trial from which this appeal is prosecuted, the court submitted the issue of manslaughter as a basis for a conviction, and also charged fully the law of self-defense. The appeal raises several questions which we will now consider.

1. In the first place, it is urged that the case should be reversed because the court, over objections of counsel for appellant, permitted the county attorney to interrogate the wife of appellant as to the facts and details of an insult and an assault made and offered her by deceased, and in permitting the county attorney to comment on this evidence and to urge the improbability of such an assault being offered. This complaint is made in view of the fact as stated, which the record confirms, that counsel for appellant had not interrogated his wife as to what in fact occurred but that her examination in chief was confined solely and only to what she *told* her husband. The contention, therefore, is that where, as in this case, the examination of the wife had been confined alone to the statement made by her to her husband, it was not competent for the State, on cross-examination to interrogate her as to what *in fact* had taken place touching the matter, the details of which she had communicated to her husband. The contention of appellant is, that if the wife made the statement which she claims she did make to her husband, and if he believed this statement, it would be immaterial as to what in fact did occur between deceased and appellant's wife. This presents an interesting question and one of some difficulty, but in view of the fact that the court instructed the jury that if the killing was unlawful, the offense would be manslaughter, it is not seen how this question could, in any event, become important. In this case the court did instruct the jury as follows: "If you believe from the evidence beyond a reasonable doubt that the defendant in the county of Hill, and State of Texas, on or about the time charged in the indictment with intent to kill did with a shotgun unlawfully shoot and thereby kill the said Ed. Kelley as charged in the indictment, then and in that case you will find the defendant guilty of manslaughter and assess his punishment at confinement in the penitentiary for any period of time not less than two nor more than five years. If you have a reasonable doubt as to whether he did so you will find him not guilty and so say." It will thus be seen that under the charge of the court, by necessary implication, appellant was given the full benefit of the facts reducing the killing to manslaughter and the jury was charged as a matter of law, that the adequate cause named in the statute did exist as completely as if the unequivocal admission had been made that his wife did com-

municate the facts of the insult to him, and that he (appellant) believed her statement to be true and that they were in fact true. And in view of the fact that the jury gave the appellant the lowest term fixed by law for this offense, it is apparent that whatever may be the correct rule touching the matter raised, that the whole question becomes and is utterly immaterial.

2. Again, it is urged that the court erred in admitting in evidence the testimony of P. J. Morris, who testified in substance that after the deceased was shot by the defendant that he was unconscious for a few minutes and that after he regained consciousness and about five or ten minutes after the shooting, and after the defendant had left the scene of the shooting and had gone a distance of five or six hundred yards therefrom, that then the witness Morris asked the deceased where he, deceased, came from to this country, and the deceased replied and told him that he came from the Territory, and that the witness further asked the deceased why the defendant shot him, and deceased replied that he did not know of any reason why the defendant shot him, because he had given him no cause to shoot him. This testimony was objected to on the ground that the statement of the deceased was not voluntary; that it was elicited by questions propounded to him by the witness, and was therefore not a part of the res gestae, and was not a part of the transaction itself, speaking through the mouth of deceased, and would not have been made but for said questions propounded by said witness; and that the same was asked and the declarations made and done in the absence of the defendant; and for the further reason that said declarations were not admissible as dying declarations because no predicate had been laid to make them admissible as dying declarations. It will be seen from the facts stated in the above bill that the declarations of deceased were made about five or ten minutes after the shooting. It will also be noted that between the time of the shooting and the uttering of these statements by the deceased, a few minutes of unconsciousness had elapsed. Just how long does not appear, but the inference is fair, indeed the conclusion seems inevitable that the declarations in question were made by deceased almost immediately after regaining consciousness. Certainly a very short time must have elapsed. Now, the objections made by appellant proceed not upon the theory that the time which elapsed between the assault and declarations was of such great duration as to take the declarations out of the rule of res gestae testimony, but upon the theory that, in order to make such declarations res gestae, they must be voluntarily made at the instance only of the party making them, and must not be induced by the act or intervention of any third party, as was done in this case. The doctrine of res gestae has frequently been the subject matter of discussion in this court, and it has been found quite difficult to lay down a general rule applicable to all the

cases. It has been held that the surrounding circumstances constituting the testimony part of the res gestae may always be shown to the jury along with the principal facts, and their admissibility is determined by the judge according to the degree of their relation to that fact and in the exercise of his sound discretion, it being extremely difficult, if not impossible, to bring this class of cases within the limit of a more particular description. Declarations made at the time of the transaction and expressive of its character, motive or object are regarded as verbal acts indicating a present purpose and intention, and are therefore admitted in proof like any other material facts. Waechter v. State, 34 Texas Crim. Rep., 297; Pilcher v. State, 32 Texas Crim. Rep., 557. The fact that the declarations are made in response to questions, is, indeed, an important fact to be considered in determining whether they are spontaneous, and evidences the facts speaking through the witness, but the mere fact that such declarations are made in response to a question or questions does not, and should not, of itself, justify us in holding that necessarily such declarations are not part of the res gestae. This seems to have been held distinctly in the case of Johnson v. State, 46 Texas Crim. Rep., 291; 81 S. W. Rep., 945. The following appears in that case: "Appellant reserved a bill of exceptions to the testimony of the witness Dillard, a deputy sheriff. At the time of the killing, this witness stated, he was at the sheriff's office, about one hundred yards from the scene of the killing. That, upon hearing the shot, he started towards the square, and en route met a man by the name of Fox and defendant. He asked them what was the trouble, and they told witness about it. That he then told defendant to step inside the sheriff's office, and he did so. He and defendant had a few words behind the door, and he told defendant he would have to take him to jail. Defendant said, "All right." Witness turned and went to jail with defendant. That Fox and defendant began talking and witness told defendant not to talk; that he did not want to take the stand against them. That witness just remarked to defendant, they wanted to tell him something about it. Witness told Fox not to say anything to him; that he did not care to hear anything about it. That defendant said a few words to him, and witness told him not to say anything about it; that he did not want to know anything about it at that time. That witness was boarding with defendant. That, when defendant said something about the blood on his hands, defendant was under arrest. That witness asked defendant how the blood came on his hands, and defendant replied he did not know. Witness then said, 'Uncle Frank, come on to jail.' They then started to go to jail, 'and as we were passing down the steps of the courthouse, defendant remarked he was not sorry he shot deceased; saying he was not sorry he shot the damn son of a bitch.' Objection was interposed to the testimony because there was no warning given;

defendant being under arrest; no sufficient predicate being laid for this statement. It appeared to the court that the statements made by defendant were within a few minutes after the homicide, while defendant was still excited from the occurrence, were freely and voluntarily made by him, and were clearly res gestae and admissible. This bill was prepared by the court. Of course, this evidence was not admissible as a confession, because defendant was under arrest and had not been warned. This is recognized by the court, and therefore he certifies it was res gestae. It is not clear from the statements of the bill how long this occurred after the transaction, but it could not have been a very great while, for the court says, a very few minutes. We are of opinion the admission of this testimony was correct. Bateson v. State, 46 Texas Crim. Rep., 34; 80 S. W. Rep., 88; 10 Texas Ct. Rep., 208." We think there was no error in the admission of this testimony and this assignment can not therefore be sustained.

3. The next ground for reversal relates to the action of the court in admitting in evidence the written testimony of one John T. Morris. The facts in respect to this matter are thus stated in the bill of exceptions evidencing the action of the court, which bill also sets out quite fully the facts in respect to the matter, the objections interposed by appellant, the testimony given by said witness: The testimony shows that when this case was formerly tried, the witness, said John T. Morris, before said former trial had removed to the State of Oklahoma, with the intention of making it his home, and that he resided in the State of Oklahoma at the time of said former trial. That about the first day of January, 1908, the said John T. Morris returned to Hill County, Texas, for the purpose of making his home in said Hill County, Texas, and that he resided in said Hill County, Texas, in the immediate neighborhood where the homicide occurred during the entire year of 1908, up until about the 10th day of September, 1908, and that his presence and residence in said Hill County, Texas, during all of said time was well and generally known in his community. That about the said 10th day of September, 1908, the said John T. Morris left the State of Texas, and went to the State of Tennessee, for the purpose of making his home in said State of Tennessee, and that since said time and now the said John T. Morris has resided and does now reside in said State of Tennessee. That this cause was reversed and remanded by the Court of Criminal Appeals of the State of Texas, on the 6th day of June, 1908, and the mandate from said court filed in the District Court of Hill County, Texas, on the 23d day of June, 1908. That during the period embraced between January 1, 1908, and the time this case was called for trial in October, 1908, no process was applied for or issued to procure the presence of the said witness John T. Morris at the trial of this cause. That neither the county attorney nor

any of his assistants knew that said John T. Morris had returned from Oklahoma to reside in Hill County, Texas, until after said John T. Morris had removed to the State of Tennessee. That the testimony also showed that when the said John T. Morris delivered said testimony before said magistrate holding said inquest, the defendant was present in person and by attorney, and he had the opportunity to cross-examine said witness, and that his attorney did in fact cross-examine said witness John T. Morris, at said inquest proceeding. That the testimony of the said John T. Morris, at said inquest proceeding, and the testimony introduced at the trial of this case, shows that the said John T. Morris was present at the time and place of 'the homicide, and that one P. J. Morris, was also present at the time and place of the homicide, and that the said witness P. J. Morris was present upon the trial of this cause, and testified to the facts and circumstances immediately attending the homicide, and that the said testimony of the said John T. Morris, taken before said magistrate at said inquest proceedings also purported to state the facts and circumstances immediately ' attending the homicide. That when the said written testimony of the said John T. Morris above referred to was so offered by the State, the defendant by his counsel then and there in open court objected to the admission of same on the grounds that same was an effort to introduce the testimony of a witness before the jury without the said witness being present at the trial, and without the defendant or his attorney having an opportunity to cross-examine said witness in the presence of the jury, and that it was a violation of section 10 of the Bill of Rights of the State Constitution, which provides that the accused in all criminal prosecutions shall be confronted with the witness against him. The defendant objected to the admission of said testimony for the further reason that no sufficient diligence was shown to have been used by the State to procure the presence of the said John T. Morris as a witness, in that, although he had been absent at the former trial, and although said written testimony had been used at said former trial, and although said witness had returned to Hill County, Texas, and to the immediate scene of the homicide, and had there resided for the first eight months of the year 1908, and although it was generally known in the community that he was in Hill County, Texas, no process was applied for or issued or served to procure the presence of said witness, although it was known for a period of three months prior to this time that the same had been reversed by the court and that it would be necessary to try said cause again, and the mandate was on file during said time in the District Court of Hill County, Texas, and that therefore it was not beyond the power of the State to procure the presence of said witness at the trial thereof, and therefore no sufficient predicate was laid for the introduction of said testimony. Defendant further objected to the admission of the said

written testimony for the reason that there was present at the
time of the killing, with the deceased and with the said John T.
Morris, to wit: P. J. Morris who was present in person at the
killing, and who had already been placed upon the witness stand
by the State and had testified to the facts testified to by the
said witness John T. Morris, in the said written testimony, and it
was only cumulative of the testimony of the said P. J. Morris, who
had testified upon the stand. All of which objections so urged
by the defendant were overruled by the court, and the counsel for
the State did read the said purported written testimony of the said
John T. Morris, so taken upon said inquest proceedings, in the
presence and hearing of the jury, the said witness testifying among
other things herein that the defendant approached to within twelve
or fifteen steps of the deceased and fired upon him with a shotgun
while the deceased was picking cotton, and P. J. Morris having testi-
fied in the previous trial to the same facts, all of said written testi-
mony of the said John T. Morris was permitted by the court to be
introduced as evidence in this cause in behalf of the State.

We held on the former appeal that this testimony was admissible.
On that appeal, however, it appeared that the witness was then resid-
ing in Oklahoma and had been for some while before the case
was called for trial. It will be noted that it distinctly appears
that it was not known to the county attorney or any of his assis-
tants that this witness had at any time returned to Hill County,
or was subject to the process of the court, nor does any fact appear
in the record which would have indicated to the county attorney or
his assistants the probability that the witness would return; nor,
was any fact shown which would excite inquiry, or put them on
notice of the witness' return to Hill County, or call upon them
to make an investigation touching the residence of said witness.
It further appears that at the trial, the witness had permanently
removed from the State and was then living in the State of Ten-
nessee. We think that the rule is, ordinarily at least, that if at the
time of the trial the witness whose testimony is sought to be in-
troduced, is beyond the jurisdiction of the court, that a sufficient
predicate is laid for the admission of his testimony regularly and
properly taken in writing at the examining trial. A case might arise
where there was a suggestion of collusion in which we might not
feel authorized to hold such testimony admissible, if the ordinary
process could, while the witness resided in the county of the prose-
cution, have secured his attendance; but that case we have not
before us. Here there was no pretense that the officers representing
the State knew of the return of the witness to Hill County, nor was
there any fact shown by which his return from Tennessee could
have been procured by the State, nor any fact except the single
one of his return to Hill County after his removal to Oklahoma

and his subsequent and definite removal to Tennessee as a permanent place of residence. We think it clear, herefore, that there was no error in admitting this testimony.

4. Compaint is made of the following paragraph of the court's charge: "In this connection you are charged that the fact that the defendant was informed that the deceased had been guilty of insulting conduct or the use of insulting words towards defendant's wife would not prevent a shooting, if there was such shooting, from being unlawful." The paragraph complained of and assailed is a part of the first subdivision of the court's charge in which he instructs them in substance, that if appellant unlawfully killed the deceased, he would be guilty of manslaughter, and in which paragraph they were instructed that, if they have a reasonable doubt as to whether he did so, they would find him not guilty and so say, and is immediately followed by the second paragraph of the court's charge where the issue of self-defense is submitted, in which the jury are instructed that it is not necessary that there should have been any real danger in order to entitle defendant to a verdict of not guilty, but it is only necessary that, viewing the matter from his standpoint, and from his standpoint alone, the acts and conduct or either of the deceased cause the defendant to have a reasonable expectation or fear of death or serious bodily injury, and that he acted at the time under such reasonable expectation or fear. It is undoubtedly true, as the court charged, that insulting conduct towards one's wife will not justify killing the person offering the insult. The principal effect of such insult is to reduce the killing to the grade of manslaughter. It should be further stated that the court charged the jury that defendant had the right to arm himself and seek the deceased for the purpose of an explanation of his conduct, but that he would not be justified in law in killing the deceased unless at the time he did so, the deceased by his acts and conduct or either, caused the defendant to have a reasonable expectation or fear of suffering death or serious bodily injury at the hands of the deceased. We think the charge of the court, construed altogether, is substantially unassailable and presents in a clear and lucid manner the issue raised by the testimony.

We have been led by carefully examining the record, and a patient consideration of appellant's brief and argument, to conclude that there is no error in the record for which the case should be reversed. It is, therefore, ordered that the same be and it is hereby in all things affirmed.

*Affirmed.*

[Rehearing denied, March 17, 1909. Reporter.]