## CAL WOODWARD v. THE STATE.

### No. 449.   Decided March 2, 1910.

**1.—Aggravated Assault—Assault upon Officer—Continuance.**

Where, upon appeal from a conviction of aggravated assault, it appeared from the record that the court below overruled appellant's fourth application for continuance, and there was no showing that any of the absent witnesses were ever in attendance, there was no error in overruling same.

**2.—Same—Evidence—Res Gestae.**

Where, upon trial for aggravated assault, there was some testimony that a third party interfered in the altercation between defendant and prosecuting witness, and that the same was a part of the res gestae, there was no error in admitting such testimony.

**3.—Same—Evidence—Res Gestae—Arrest—Resisting Officer.**

Where, upon trial for aggravated assault, one count in the information charged the defendant with resisting an officer, and the count on which defendant was convicted charged him with an aggravated assault with a deadly weapon, there was no error to admit testimony as to what resistance defendant made while he was being carried to jail by the officer. This was res gestae.

**4.—Same—Evidence—Declarations by Defendant.**

Upon trial for aggravated assault with a deadly weapon there was no error in admitting in evidence the fact that after the defendant was released from arrest, defendant declared that he went after the pistol the officer had taken from him for the purpose of killing the latter.

**5.—Same—Bill of Exceptions—Practice on Appeal.**

The court's approval of a bill of exceptions is not a certificate or statement that the grounds of the objection is approved, and where it did not appear from a bill of exceptions that appellant was under arrest at the time he made certain declarations the bill can not be considered on appeal.

**6.—Same—Evidence—Bill of Exceptions.**

Where, upon appeal from a conviction of aggravated assault, the bill of exceptions did not show the object and purpose of the rejected testimony, and did not state what the answer of the witness would have been, it can not be assumed on appeal that such testimony would have been favorable to appellant.

**7.—Same—Argument of Counsel.**

Where, upon appeal from a conviction of aggravated assault, it did not appear that the argument objected to was of a substantial character, and no instruction was requested by the defendant for the withdrawal of such argument, there was no error.

**8.—Same—Sufficiency of the Evidence.**

Where, upon appeal from a conviction of aggravated assault, the same was sustained by the evidence, there was no error.

Appeal from the County Court of McCulloch. Tried below before the Hon. Harvey Walker.

Appeal from a conviction of aggravated assault; penalty, a fine of $100 and two months confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, and *J. E. Brown,* County Attorney, for the State.

RAMSEY, JUDGE.—The information was filed in the County Court of McCulloch County on the 11th day of April, 1908, by John E. Brown, county attorney of said county, based on the affidavit of S. H. Mayo, charging appellant with an aggravated assault upon the person of him, the said S. H. Mayo, who was alleged to have been an officer in the discharge of the duties of his office, and such fact was known to appellant and declared by the officer to him that he was such officer discharging his duty, and the second count charges that said aggravated assault was committed by the use of a deadly weapon, to wit: a pistol, and under the third count he was charged with resisting an officer. He was convicted at a trial had in said court on the 13th day of October, 1909, under the second count, of an aggravated assault, and his punishment assessed at a fine of $100 and two months confinement in the county jail.

For a misdemeanor there are a great many questions raised in the record, the more important only of which we will undertake to discuss. The facts briefly stated by Mayo are that he was deputy sheriff in the county named, and that on the day in question he was attracted to appellant's place by loud cursing and swearing; that he went there and told appellant that he would have to cut that out or he would have to put him in jail, to which appellant replied, "You will play hell," and kept on cursing. That he then walked up to appellant, caught hold of his arm, and told him to come on, that he would have to arrest him, to which appellant replied, he could do no such thing, and jerked loose and drew back as if to strike him. That he told appellant not to do this; that he then jerked loose and ran back towards the end of the uno joint, and that witness, believing he was going after a pistol, ran after him; that he ran to the back end of his joint and jerked out a drawer in the bar, and grabbed his pistol. Here the witness describes at some length a struggle which ensued, and the threats of appellant to shoot him, stating, among other things, that he had the pistol in both hands and had it cocked, and that he had hold of his arm and was endeavoring to prevent him from shooting him and

in the meantime getting his own pistol. That at this juncture one Teague interfered, but on the witness threatening to shoot him he desisted. That witness finally got his pistol loose from Teague, and as he says, threw it down in Woodward's face and told him to drop his gun. After some parley he did this and that he afterwards took him to jail with the aid of Ed Scales. In the meantime appellant was cursing him, and pulling back and saying he would kill him. The other details we deem unnecessary to set out. Appellant says that on the day that Mayo approached him, and told him he would lock him up if he did not cut out that racket, that he told him, Mayo, that he was not doing anything to be arrested for; that he had that morning had a difficulty with a man named Neelin, and had put him out of his house, and at this moment he looked out and saw Neelin coming back, when he went to the back end of the building and got his pistol. That when he turned around, after getting his pistol, he was looking down the barrel of Mayo's pistol, when Mayo told him to put his, appellant's, pistol up, to which he replied, "All right, you put yours up." That he then pushed his pistol under the bar on a shelf, and Mayo then put his pistol up, and told appellant to come on and go to jail. That he then took hold of him, and said he was going to put him in jail, when he told Mayo that he would have to take him, that he was not going to walk to jail. That Mayo then got Scales to help him. That they took him to jail but did not put him in; that they took him to the courthouse, and after keeping him there awhile turned him loose. He says when he got his pistol he was in his own house, and got same to protect himself and protect his house with; that he did not strike Mayo or attempt to strike him any time that day. This statement perhaps will sufficiently present the issues in the case.

1. The first question raised relates to the action of the court in overruling the application for continuance for want of the testimony and on account of the absence of several witnesses named, Keller, Proctor, Wiggington, Scales, Teague, Baker and Bradley. The application recites that it was appellant's first application. It shows that process was issued for the witnesses named on the 16th day of April, 1908. The application itself was filed on the 12th day of October, 1909, some eighteen months after the last process was issued or served. In his explanation to the bill of exception evidencing this matter the court states that the application in question was appellant's fourth application for a continuance. Having accepted the bill of exception with this explanation and statement of the court, it is evident that appellant must be and is bound by the fact therein stated. In view of the fact that this was appellant's fourth application for continuance, great respect must be paid to the discretion of the trial court, and we would not feel at liberty to reverse the case for the overruling of the fourth application where no diligence had been exercised for almost eighteen months to secure the presence of the witnesses. There must some time come a day when the case must be tried, and having secured three

continuances, appellant is in no condition to complain that a fourth application for continuance was refused him. It will be noted that there is no allegation in the application that any of the witnesses had ever attended the trial at any term. Mixon v. State, 36 Texas Crim. Rep., 66; Lawrence v. State, 36 Texas Crim. Rep., 601.

2. Complaint is made of the action of the court in admitting the testimony of Mayo as to the fact of the interference of Teague to the effect that Teague caught Mayo and to Mayo telling Teague he would shoot him if he did not turn him loose. The bill of exception evidencing this matter is approved with the explanation that the evidence showed that Teague was a bartender in the uno joint, which appellant was then running, and in which the difficulty occurred, and that appellant was present when Teague grabbed Mayo's pistol, Teague being on the side of him and Woodward on the other, and that it was all a part of the res gestae of the assault by appellant, and the court permitted it to go before the jury as a part of the res gestae. That there was no contention made in the court below that appellant was responsible for what Teague did, and it was not admitted for that purpose. The testimony does not show that there was any repudiation of Teague by appellant, nor did he attempt to show any repudiation of it on the trial. There was sufficient evidence, we think, to fairly justify the conclusion that Teague and appellant were acting together in making the assault. Besides, the evidence was a part of the res gestae, and it was necessary to make this proof to correctly detail and set out the facts of the assault. We think there can be no doubt but that this testimony was admissible.

3. Appellant complained of the action of the court in admitting in evidence against him the following testimony of the witness Mayo: "While I was dragging him to the jail the defendant cursed and abused me, and threatened to kill me and said he would kill me after I released him at the courthouse. He again said he was going to kill me. He called me off and asked me for his pistol, he said he wanted it, and he intended to kill me." This testimony was objected to on the ground that it was immaterial, incompetent, irrelevant and prejudicial; that it was proving another and different offense to that alleged against defendant; that it was admitting in evidence statements made by defendant while under arrest. In approving the bill the court does so with the following qualification: "Mr. Mayo did not use the term 'dragging' him to jail, but said while he was taking him to jail. The proof showed that he did have to drag him and have help to do it, but the witness did not use that language, and such was not the testimony objected to. The objection was to the witness stating anything that occurred while the defendant was under arrest. One count in the information charged defendant with resisting an officer, and the count under which he was convicted charged him with an aggravated assault, and the court permitted the witness to state what resistance the defendant made, and what he did, to go before the jury to be considered

as evidence under the third count of the information. He was charged with resisting an officer and the court held that his resistance, and his statements showing his feeling toward the officer and his refusal to surrender to the officer were competent evidence under the third count of the information, as being part of that offense, the res gestae of the offense of resisting an officer for which defendant was on trial. The statement made at the courthouse that 'he went after the pistol for the purpose of killing Mayo, and intended to kill him when he went after it,' was after his release from arrest and he had voluntarily come back to the courthouse to try to get Mayo to let him have his pistol. The statements made were not admitted as confessions, admissions, or inculpatory statements while under arrest, but were admitted as res gestae of the offense charged in the third count of the information, except the statement when he came back after his gun after his release that he intended to kill Mayo when he went after the gun, etc., but that was after his release from arrest." If we should look at this statement solely from the bill of exception itself, it may be doubtful whether the bill is sufficient in that it does not show and state as a fact that appellant was under arrest at the time complained of. It is well settled that the court's approval of a bill of exceptions is not a certificate or statement that the grounds of the objection are true. Huffman v. State, 28 Texas Crim. App., 174; Bigham v. State, 36 Texas Crim. Rep., 453. But we think that if it can be held that the bill is sufficient, the testimony was admissible at least under the third count in any event. This charged appellant with resisting an officer. The matters testified to were but a part of his general course of conduct from the time his arrest was demanded until he was taken to jail. As to whether he was resisting an officer and whether his conduct was wilful and contumacious will be shown not only by what was done and said at the time the officer demanded his arrest, but by all of his conduct until confined in custody. This being a misdemeanor case, the State had the right to introduce any evidence that was admissible under either count, it not being required to elect between the counts. We think also the testimony was admissible as res gestae on all the counts. The only evidence as to which this statement could not apply perhaps would be the statement by appellant that he intended to kill Mayo when he went after his pistol. This, however, as the court certifies, was made not while he was under arrest, but after his release when he had voluntarily come back and endeavored to get the witness Mayo to give him back the pistol which had been taken from him. As to the remainder of the testimony, if the acts were res gestae, it is immaterial and can not defeat the admissibility of the testimony. In the well considered case of Johnson v. State, 46 Texas Crim. Rep., 291, in passing on a matter quite similar to this, Judge Davidson, speaking for the court, held that where a defendant made a statement without warning to the officer who had arrested him a few minutes after the homicide, while he was still excited from

the occurrence, and such statement was freely and voluntarily made to the effect that he was not sorry he shot deceased, it was admissible not as a confession, but as res gestae. In the opinion, speaking of this testimony, he says: "Of course, this evidence was not admissible as a confession because defendant was under arrest and had not been warned. This is recognized by the court, and, therefore, he certifies it is res gestae. It is not clear from the statement in the bill how long this occurred after the transaction, but it could not have been a very great while, for the court says a very few minutes." We are of opinion the admission of this testimony was correct. Bateson v. State, 46 Texas Crim. Rep., 34, 10 Texas Ct. Rep., 208.

4. Again, during the trial while the witness Mayo was on the stand, the following question was propounded to him: "Do you or not remember a conversation had by and between you, sheriff T. L. Samson, and this defendant a short time prior to the day of this alleged assault in the back part of the building where defendant conducted his business, in which conversation T. L. Sansom, sheriff, told defendant to keep a quiet, orderly house, and if a disorderly crowd came in to put them out; that defendant had a right to protect his place of business, and that we, meaning the sheriff's force, will stand by you in it." To this question and the evidence sought to be elicited thereby the State objected because, as the bill recites, same was immaterial, irrelevant and incompetent, which objections were by the court sustained, and to which action of the court appellant excepted. The court approves this bill with the following explanation: "The defendant sought to show a conversation between himself and Sheriff Sansom and Deputy Mayo about the time he opened up his uno joint, which was some weeks before the alleged assault in this case, sought to show some sort of advice and promise of protection from the sheriff's force. The county attorney objected upon the ground that the sheriff was not the legal adviser of the county, and any statement he might make of his opinion of defendant's legal rights would not be admissible in this case against the State, and that the State was not bound by any statement or declaration or promise by the sheriff; that the testimony was wholly foreign to every issue in this case, and tended to shed no light upon any issue, that it could serve no purpose except to confuse the issues in the case and was calculated to mislead the jury, and that it was wholly incompetent, irrelevant and immaterial, and the court sustained said objections and excluded the testimony." This bill of exceptions, it will be noted, is fatally defective and can not be considered for the reason that the object and purpose of the testimony are not stated, nor is it stated what the answer of the witness would have been, and we can not assume in aid of the bill that the evidence of the witness would have been favorable to appellant. This is so well settled as to scarcely need the citation of authority. See White's Anno-

tated Code of Criminal Procedure, subdivision 5, section 1123, for collation of authorities.

5.   More than one complaint is made of the argument of the county attorney in closing the case.  These are not of a very substantial character, and in view of the explanation of the court we would not in any event feel it our duty to reverse the case on account of the argument complained of.  It appears, however, that as stated by the court, no instruction was requested by counsel for appellant directing the jury to disregard or withdrawing the argument complained of.  In this condition of the record it is manifest that these matters present no ground for reversal.

The matters which we have discussed above are the more important questions raised on the appeal.  The case was one of fact, and while the evidence is conflicting, there is abundant testimony which, if believed by the jury, would support the conviction.  In this condition of the record we feel that we are without power to interfere.  It is therefore ordered that the judgment of conviction be and the same is hereby in all things affirmed.

*Affirmed.*