NATHAN BROOKS V. THE STATE.

No. 16462. Delivered February 7, 1934.
Rehearing Denied March 14, 1934.
Reported in 69 S. W. (2d) 99.

The opinion states the case.

*Frank M. Tinkham,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder, and his punishment assessed at death.

The testimony adduced upon the trial is substantially as follows: The appellant and deceased, Ollie Lee Morris, are negroes and had lived together as husband and wife, although not legally married, for about 5 or 6 years up to within about a month prior to the time the appellant is alleged to have killed deceased. On the 5th day of May, 1933, deceased was employed by Mrs. McKenzie and that morning while en route to her work she boarded a street car. The appellant also boarded said car at Travis Street and Franklin Avenue and took his seat just to the rear of the seat occupied by deceased and another woman. He tapped deceased on the shoulder and asked her to come and sit by him as he wanted to talk to her, whereupon the woman who occupied the seat beside deceased moved over to a seat across the aisle and just a little to the rear, and the appellant went over and took the seat by the side of deceased. After riding some distance, the street car stopped and both the appellant and deceased started towards the front of the car apparently with the view of disembarking. In going to the front of the car deceased was ahead and the appellant was in the rear of her shoving her along in the aisle. When they reached the front of the car deceased begged the operator of the street car not to let appellant take her off of the car. The operator then took his controller key and asked appellant to leave her alone, at which time deceased turned and started back down the aisle

towards the rear of the car. The appellant immediately followed her, caught her and stabbed her. The operator upon seeing what the appellant was doing rushed to the aid of deceased and struck appellant on the head with the controller key which apparently stunned him. Deceased then jumped from the car and ran. Appellant also jumped from the car and ran after her, overtaking her when she fell on the sidewalk, and while she was on the ground he bent over her and stabbed her several times, inflicting wounds upon her body which resulted in her death. After the appellant had stabbed her several times and after the operator of the car had struck him with the controller key and while she was laying on the sidewalk bleeding, the appellant left, going up the street. Mr. C. O. Cheshire, who was some short distance from the scene of the difficulty, saw appellant leave the girl lying on the ground and overtook him after he had walked about one and one-half blocks, stopped him, and asked him if he was "the boy who hurt the girl," to which the appellant replied, "Yes," whereupon Mr. Cheshire said to him, "Come on back down there with me, you are liable to have hurt that girl," whereupon the appellant replied, "I hope she is dead when we get back down there."

The defendant interposed the plea of self-defense, claiming that the deceased at the time had a knife and endeavored to cut him. The testimony, however, further shows that deceased was a small woman weighing about 95 pounds and had no knife or weapon of any kind, while the appellant weighed about 140 to 150 pounds.

By bill of exception No. 1 the appellant complains of the action of the trial court in permitting the state to prove by Mr. Cheshire that he overtook the defendant about one and one-half blocks from the scene of the alleged homicide and asked him if he was the "boy who hurt that girl," to which appellant replied, "Yes," whereupon the witness told the appellant, "You come back down there with me, you are liable to have hurt that girl," whereupon the appellant replied, "I hope she is dead when we get back down there." The bill of exception was prepared by the court and shows that the statement was made by the appellant to said witness within seven or eight minutes after the appellant had killed deceased and had walked a distance of one and one-half blocks. The court admitted said testimony over the objection of the appellant upon the ground that it was res gestae of the arrest. The court's statement that it was res gestae of the arrest is, to our view, not exactly correct, but we do agree with the court that it was a res gestae statement and was admissible although the defendant was under arrest at the

time, was not warned, and the statement was not reduced to writing and sworn to as required by statute. Judge White, in passing upon a similar question in the case of Powers v. State, 5 S. W., 153, said: "To our minds this explanation is entirely satisfactory, and shows sufficient reason for the admission of the testimony, the object of which was to establish the probable feelings of the defendant towards deceased, and to discover and illustrate the motive for his actions at the time of the homicide. * * * 'Incidents which are thus immediately and unconsciously associated with an act, whether such incidents or doings or declarations, become in this way evidence of the character of the act. * * * Instinctiveness is the requisite; and when this obtains the declarations are admissible.'" Judge Davidson, speaking for this court in the case of Johnson v. State, 81 S. W., 945, involving almost the identical question presented here, said: "Of course, this evidence was not admissible as a confession, because the defendant was under arrest and had not been warned. This is recognized by the court and therefore he certifies it was res gestae. * * * It is not clear from the statements of the bill how long this occurred after the transaction, but it could not have been a very great while for the court says a very few minutes. We are of the opinion the admission of this testimony was correct." So in the case under consideration the testimony objected to was not admissible as a confession because the defendant was under arrest and had not been warned, but it is clear from the bill of exception that the defendant had only walked from the scene of the difficulty one and one-half blocks when he was overtaken by the witness and requested to return to the scene of the difficulty, whereupon he replied, "I hope she is dead when we get back down there." This testimony tended to establish the feeling of the defendant toward the deceased and to illustrate the motive of his actions at the time of the homicide. Hence, we are of the opinion that the testimony was admissible as a part of the res gestae, and in support of the views herein expressed we refer to the following authorities: Gantier v. State, 21 S. W., 255; Weathersby v. State, 15 S. W., 823.

No reversible error appearing in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant complains of our disposition of the only bill of exceptions appearing in the record. We have again gone over said complaint in connection with the motion. The bill of exceptions referred to is not very clear, and we have had some difficulty in determining therefrom just exactly the point of appellant's complaint, but we take it that he is offended by the reception of testimony as to a statement made by him, in effect, that he hoped his wife would be dead when he got back to her. Mr. Crook testified that appellant was brought back by Mr. Cheshire,—not an officer,—who accompanied appellant back to the place where the stabbing occurred,—some seven or eight minutes after the killing. Mr. Cheshire testified that he met appellant about a block and a half from where the stabbing took place, and told him he had better go back with him down there and see about the woman's condition. They had gone but a little way when appellant made the remark which seems to be the subject of this objection. Appellant had the bloody knife in his possession when he met Mr. Cheshire. He made the statement almost immediately after they started back to the scene of the killing. We think the conclusion, expressed in our original opinion, that this was part of the res gestae, is supported by the facts, and that the motion for rehearing should be overruled, and it is accordingly so ordered.

*Overruled.*